UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BELGRAY, INC.,

    Plaintiff/Third-Party Defendant      Case No. 1:12-cv-668

v.      Dlott, J.
     Bowman, M.J.

SOUTHWEST OHIO REGIONAL
COUNCIL OF CARPENTERS
PENSION PLAN AND TRUST, et al.,

    Defendant, Third-Party Plaintiffs,

v.

MAINLINE ROAD & BRIDGE
CONSTRUCTION, INC.,

    Third-Party Defendant.

**REPORT AND RECOMMENDATION**

Pursuant to local practice, this case has been referred to the undersigned magistrate judge for preliminary consideration and a Report and Recommendation (R&R) concerning the motion to dismiss filed by Plaintiff/Third-Party Defendant Belgray, Inc. *See* 28 U.S.C. §636(b)(1).

**I. Background**

On June 28, 2012, the Southwest Ohio Regional Council of Carpenters Pension Plan and the Board of Trustees of the Southwest Ohio Regional Counsel of Carpenters Pension Plan and Trust (collectively "the Plan"), through counsel, contacted Belgray, Inc. concerning the Plan's belief that Belgray was liable to the Plan under ERISA in the

amount of $623,176. Belgray responded by filing this action on August 31, 2012 against the Plan, seeking declaratory and injunctive relief to prevent the Plan from claiming that Belgray is an employer under the Multiemployer Pension Plan Amendment Act of 1980 (MPPAA), and seeking to refute the Plan's contention that Belgray is liable for "withdrawal liability" previously incurred by Mainline Road & Bridge Corporation ("Mainline"). (See Doc. 1 at ¶30, "Belgray requests this Court to issue declaratory relief finding that it is not the continuation of Mainline").

In general, the parties agree that in appropriate circumstances, an employer can be held liable for "withdrawal liability" if it withdraws from an underfunded multiemployer pension plan. The amount a liable employer will owe is calculated as the withdrawing employer's proportionate share of the underfunded vested benefits in the relevant pension plan. In this case, the Plan appears to be severely underfunded. The reasons for that are in contest and not relevant to the pending motion, but the underfunding allegedly would result in withdrawal liability amounting to $623,176.

The parties agree that Mainline is an entity that was engaged in the construction industry until 2010, with its principal place of business in Beavercreek, Ohio. The sole shareholders of Mainline were Timothy Meyer and Wm. Dean Hopkins, who served as President and Vice-President, respectively. For some period of time, Joshua K. "Kipp" Boone served as Superintendent for Mainline, although he was not a shareholder or officer of that entity. Messrs. Meyer and Hopkins retired in 2010, ceasing operations of Mainline. Close in time to that event, Mr. Boone formed Belgray, hiring many of Mainline's employees.

In response to Belgray's complaint, the Plan filed a third party complaint against Mainline, as well as a counterclaim against Belgray. (Doc. 5). The Plan alleges in its counterclaim that Belgray is the "alter ego" of Mainline, in that it represents a "continuation of Mainline." (*See id.* at ¶¶21, 25). The Plan seeks to hold Belgray and Mainline jointly and severally liable for the referenced withdrawal liability.

Belgray moved to dismiss the counterclaim for failure to state a claim, pursuant to Rule 12(b)(6). (Doc. 6). The Plan filed a response in opposition (Doc. 8), to which Belgray filed a reply (Doc. 9). Mainline filed an answer to the Plan's third party complaint against it, but otherwise has filed no response in connection with Belgray's motion.

## II. Analysis

### A. Standard of Review – Rule 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a plaintiff need only plead "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). In recent years, the Supreme Court has brought greater focus to that pleading standard. In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563, 127 S.Ct. 1955, 1969, 167 L.Ed.2d 929 (2007), the Supreme Court held that a complaint must contain facts sufficient to "state a claim to relief that is plausible on its face" *Id.* Elaborating further in *Ashcraft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the Supreme Court explained: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

3

Despite instituting a new "plausibility" standard, *Twombly/Iqbal* did not alter the court's duty to construe the pleadings in the light most favorable to the non-moving party. Thus, on a motion to dismiss, the court must draw all reasonable inferences in the favor of that non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). A court is not required to accept as true mere legal conclusions unsupported by factual allegations to determine whether the plausibility standard is satisfied. However, in reviewing a Rule 12(b)(6) motion, a court must "confine its … ruling to matters contained within the pleadings and accept all well-pleaded allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 481 (6th Cir. 2009)(quoting *Gentek Building Products, Inc. v. Sherwin-Williams*, 491 F.3d 320, 330 (6th Cir.2007)).

### B. Plaintiff Belgray's Motion to Dismiss

#### 1. The Underlying Theory of Liability

Belgray argues first that the Plan's counterclaim should be dismissed because Belgray cannot be held liable for Mainline's alleged MPPAA liability under a "common control" theory, in which Belgray and Mainline would be treated as a single employer. Belgray notes that the counterclaim fails to allege that Belgray owns a controlling interest in Mainline, or vice versa. Contrary to Belgray's argument, however, the Plan does not seek to impose liability under a "common control" theory. Instead, a fair reading and construction of the counterclaim alleges liability under the "alter ego" theory.

Even if construed as an alter ego theory, Belgray alternatively contends that "the

4

MPPAA does not permit a claim for alter ego liability." (Doc. 6 at 7). Belgray's argument is overbroad and simply misstates the law in this respect. The MPPAA clearly does permit recovery under an "alter ego theory," under appropriate circumstances. *See, e.g., Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund et al. v. Palladium Equity Partners, LLC et al*, 722 F. Supp.2d 854, 871 (E.D. Mich. 2010)(quoting *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 579 (6th Cir. 1986)). Belgray argues in its reply memorandum that the "essence" of the Plan's allegations is that Belgray and Mainline are under common control (Doc. 9 at 2), not alter egos, and that "[s]imply because the Carpenters Plan chose to call its claim an 'alter ego' claim does not make it so." However, the party drafting the complaint (in this case the Plan) is entitled to plead a claim in the manner that it wishes. It is not the prerogative of this Court to reformulate or reconstruct a claim, simply to dismiss it for failure to state a claim, so long as the claim is otherwise properly pled.

### 2. Alter Ego Theory

Turning to the substance of the alter ego theory clearly asserted by the Plan, Belgray argues that the Plan fails to allege specific facts that would support such a claim. The undersigned disagrees.

A "more relaxed" alter ego doctrine has been applied in the context of labor disputes, particularly in cases where a new employer continues the operations of an old employer, and the new entity is "merely a disguised continuance of the old employer." *Yolton v. El Paso Tennessee Pipeline Co.*, 435 F.3d 571, 587 (6th Cir. 2006)(internal quotation marks and additional citations omitted). As the Plan notes, the Sixth Circuit

5

has confirmed that in this "relaxed" analysis, no single factor is controlling, and not all factors need to be present. *Id.* Instead, "the essential inquiry … is 'whether there was a bona fide discontinuance and a true change of ownership ... or merely a disguised continuance of the old employer.' " *Id.*, at 588 (quoting *NLRB v. Allcoast Transfer, Inc.*, 780 F.2d 576, 579 (6th Cir. 1986)).

Belgray argues that because the Plan has not alleged that Belgray and Mainline share common ownership, substantially identical equipment, or an intent to evade union obligations including withdrawal liability, the Plan's counterclaim is legally deficient and must be dismissed. However, having reviewed the allegations in the counterclaim, and in view of the relaxed alter ego standard that applies to this case, the undersigned concludes that the Plan has made sufficient allegations to withstand Belgray's motion.

To begin with, the Plan has alleged that Mainline and Belgray shared a common business purpose to provide "full service contracting carpentry service." (Doc. 5, ¶19). There is no doubt that Belgray disputes this allegation, arguing that it does not offer "full-service carpentry service" but instead performs work within the jurisdiction of the Operators Union and the Laborers Union, and not the Carpenters Union. However, the allegations in the counterclaim are sufficient to survive Belgray's Rule 12(b)(6) motion. To the extent that Belgray challenges the supportability of the Plan's factual allegations, Belgray's arguments can be presented anew after discovery, when Belgray (and the Plan) can offer evidence in support of their respective positions.

The Plan further alleges that Belgray began operating shortly after Mainline stopped operating. (*Id.* at ¶24). The counterclaim specifically alleges that Mainline

6

began work that was covered under the collective bargaining agreement, and that Belgray completed covered jobs after Mainline went out of business. (*Id.* at ¶21). Last, the counterclaim includes allegations that, when viewed in the light most favorable to the Plan, would support a conclusion that Belgray and Mainline share substantially identical operations (*see id.*, alleging that Belgray's website references Mainline's prior work), shared a workforce (*see id.* at ¶22), including substantially the same supervisors, (*id.* at ¶22), and shared substantially the same customer base (*id.* at ¶23).

Belgray argues vigorously that under the Sixth Circuit's unpublished and brief analysis in *The Trustees of the Tile, Marble & Terrazzo Insur. Trust Fund v. B&B Tile & Marble Co., Inc.*, 2012 U.S. App. LEXIS 12956, 471 Fed. Appx. 522 (6th Cir. June 22, 2012), the Plan has not alleged and cannot establish that Belgray and Mainline shared operations. As the Plan points out, however, *B&B Tile & Marble Co., Inc.* is factually distinguishable insofar as that case involved the application of the alter ego doctrine to two simultaneously operating businesses, and did not involve the "disguised continuance" theory upon which the Plan relies in this case. Another critical distinction is that *B&B Tile* involved a motion for summary judgment made after discovery, not a motion to dismiss.

Belgray additionally cites *Road Sprinkler Fitters Local Union No. 669, U.A. AFL-CIO v. Dorn Sprinkler Co.*, 669 F.3d 790, 794-95 (6th Cir. 2012), another case that, like *B&B Tile*, is both factually and procedurally disgintuishable. Belgray argues that under *Dorn Sprinkler*, the Plan has alleged insufficient facts that make it "plausible" that Mainline and Belgray share identical management, as well as insufficient facts to show

7

that the two shared customers. In *Dorn Sprinkler*, the two companies started out as competitors and co-existed as such prior to the closing of one of the companies. Affirming the award of summary judgment, the Sixth Circuit went through the well-developed record in detail, noting that there was "no real continuity of work force," given that the record reflected that "only two of the fourteen Dorn Fire Protection employees worked for Dorn Sprinkler at or around the time of it closing." *Id.* at 795. Belgray asserts that "because the Carpenters Plan alleges that Belgray finished only one project after Mainline closed its doors," then "as a matter of law" the Plan has alleged insufficient facts to state its alter ego claim.

Technically, the Plan's allegations are not limited, as Belgray asserts, to "only one project." Instead, the counterclaim alleges that Belgray had the same business operations "as shown, *in part*, by Belgray's continuation of Mainline's work, *including* the Duck Creek Improvement." (Doc. 5 at ¶21, emphasis added). It remains to be seen whether many of the Plan's allegations will be proven after development of the record through discovery. However, at this very early stage of this litigation, the Court is evaluating only whether the counterclaim sufficiently alleges a "plausible" alter ego theory of recovery. There is no doubt that the counterclaim meets this standard. Belgray's argument is rejected because it improperly conflates the standard applicable to the pending motion to dismiss with the standard applicable to a summary judgment motion.

### 3. Arbitration and the Determination of Belgray's Status

In its counterclaim, the Plan alleges that Belgray waived its right to challenge the

8

assessment of withdrawal liability by failing to request or initiate arbitration under the MPPAA. (Doc. 5 at ¶¶34-35). To the extent that this Court declines to dismiss the counterclaim entirely, Belgray seeks a ruling that no such waiver has occurred, because first this Court must determine whether or not Belgray is an employer. *See, e.g., The Mason and Dixon Tank Lines, Inc. v. Central States, Southeast and Southwest Areas Pension Fund*, 852 F.2d 156, 167-168 (6th Cir. 1988). In response, while not contesting that the issue of whether Belgray is an employer is properly presented before this Court (see Doc. 8 at 17), the Plan maintains that *if this Court agrees that Belgray is an "alter ego" employer*, then Belgray's failure to timely initiate arbitration should operate as a waiver.

Belgray's position is correct, to a point. The issue of whether an entity is an "employer" determines whether the MPPAA is applicable at all. An entity that disputes that it is an employer does not *necessarily* waive its right to arbitrate, should a court be called upon to resolve that preliminary issue, since equitable tolling may apply under those circumstances. *See Board of Trustees, Sheet Metal Workers' Nat. Pension Fund v. Palladium Equity Partners, LLC*, 722 F. Supp.2d 854, 875 (E.D. Mich. 2010)(recognizing that a court may equitably toll the deadline for initiating arbitration under similar circumstances). The determination of whether waiver or equitable tolling should apply on the record presented, however, is premature. *See id.* (holding that the parties may present evidence on the question of equitable tolling if, after trial, the court determines that the defendant is an employer subject to the MPPAA).

9

### III. Conclusion and Recommendations

For the reasons discussed above, **IT IS RECOMMENDED THAT** Belgray's motion to dismiss (Doc. 6) be **DENIED**.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

BELGRAY, INC.,

       Plaintiff/Third-Party Defendant      Case No. 1:12-cv-668

  v.                                         Dlott, J.
                                               Bowman, M.J.

SOUTHWEST OHIO REGIONAL
COUNCIL OF CARPENTERS
PENSION PLAN AND TRUST, et al.,

       Plaintiffs,

  v.

MAINLINE ROAD & BRIDGE
CONSTRUCTION, INC.,

       Third-Party Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

11